DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant appeals from a judgment of conviction for marijuana cultivation entered on a no contest plea in the Huron County Court of Common Pleas. Because we conclude that the trial court properly denied appellant's motion to suppress evidence, we affirm. *Page 2 
 {¶ 2} Appellant, Christopher Junk, failed to appear for work one day in late January 2007. He did not notify his workplace of either his intention not to appear or of his whereabouts. Appellant's supervisor attempted to reach appellant by phone, but was unsuccessful. In the past, appellant regularly contacted his workplace whenever he was absent.
 {¶ 3} Appellant had injured his back at work approximately five days before his unscheduled absence. The supervisor, out of concern that appellant might have aggravated his back to the extent that he was in physical danger, contacted the Greenwich, Ohio Police Department after two days absence. The department called appellant's house repeatedly, but received no answer.
 {¶ 4} Unsatisfied with the police department's response to his query, the supervisor next called the Huron County Sheriff's Department and explained his concern for appellant's well-being. In response, a deputy drove by appellant's residence and observed a vehicle parked in the driveway, but did not investigate further.
 {¶ 5} The next day, Thursday, January 25, 2007, the supervisor again contacted the Greenwich Police Department. The supervisor explained that he had contacted the sheriff's department the day before, but had received no update on the result of the deputy's check of appellant's residence. A Greenwich police officer again made several calls to appellant's residence, but received no answer. The officer also contacted a sheriff's department dispatcher in order to find out the details of the deputy's check of appellant's residence the day before. Based on the results of this inquiry, the department *Page 3 
dispatched two officers to appellant's residence in order to conduct a "welfare check." Appellant's residence was located approximately two miles outside of the Greenwich Police Department's jurisdiction, but the officers acted pursuant to a mutual aid agreement between the police and sheriff's departments.
 {¶ 6} According to suppression hearing testimony, when the two officers arrived at appellant's residence they noted that there were no vehicles in the driveway. The officers observed fresh snow on the ground, but did not see any footprints around the house. They also noticed several malnourished cats around the outside of the house. In addition, the windows on the first floor were covered up.
 {¶ 7} When the officers knocked on the locked front door, no one responded. One of the officers then went to the rear of the house and found that the back door was ajar and snow had blown into the house. At that point, the officers concluded that it was necessary to enter the house in order to make sure that appellant was not incapacitated, and that there was no foul play.
 {¶ 8} The officers testified that they entered the residence, repeatedly identified themselves and called out for appellant. The officers checked all of the rooms on the first floor, but found no one. Next, one of the officers went upstairs to the second floor of the house. Once at the top of the stairs, the officer observed a closed door to his right. Still calling for appellant, the officer opened the door and observed 10-12 marijuana plants growing underneath a heat lamp. The officer then directed his partner to come upstairs *Page 4 
and view the contents of the room. The officers also observed that the room was heated, but the rest of the house was cold.
 {¶ 9} After discovering the plants, the officers checked the other rooms on the second floor but did not locate appellant. The officers then secured the back door, left the premises, and drove back to the Greenwich police station. Once there, the officers contacted a detective at the sheriff's department and told him what they had observed in appellant's residence. The detective asked the officers to complete a report of what they observed at appellant's residence and forward it to him.
 {¶ 10} Upon receiving the report, the detective prepared a search warrant. The detective attached to the warrant both the Greenwich Police Department report and the report of the deputy who had conducted the initial check of the residence. The Norwalk Municipal Court approved the warrant, and the sheriff's department executed it at appellant's residence on Monday, January 29, 2007, seizing the marijuana plants and equipment used for marijuana cultivation.
 {¶ 11} On April 2, 2007, a grand jury issued an indictment charging appellant with violation of R.C. 2925.04(A)(C)(4)(c) for cultivation of marijuana and R.C. 2923.24(A) for possession of criminal tools. Appellant pled not guilty to both counts and moved to suppress the evidence found in his home. Following a hearing, the trial court denied appellant's motion to suppress. Appellant then amended his plea to no contest, was found guilty as charged and sentenced to serve 90 days in the Huron County Jail. From this judgment of conviction, appellant now appeals. *Page 5 
 {¶ 12} Appellant presents one assignment of error:
 {¶ 13} "THE TRIAL COURT BELOW FAILED TO RECOGNIZE THE DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT TO BE FREE OF A WARRANTLESS SEARCH MADE BY A POLICE AGENCY WITHOUT JURISDICTION WHICH CLEARLY VIOLATED THE SANCTITY OF THE DEFENDANT'S HOME. THE TRIAL COURT BELOW FURTHER MISAPPLIED THE `EMERGENCY EXCEPTION' IN RULING THAT INFORMATION THAT WAS DAYS OLD CONCERNING AN EMPLOYER'S CONCERN FOR HIS EMPLOYEE CONDUCTED A WARRANTLESS SEARCH ON THE DEFENDANT'S RESIDENCE AND PROVIDED THE ONLY INFORMATION RELIED BY THE COURT ISSUING A SUBSEQUENT SEARCH WARRANT OF THE DEFENDANT'S PREMISES."
 {¶ 14} An appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long
(1998), 127 Ohio App.3d 328, 332. During a suppression hearing, the trial court assumes the role of the trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366;State v. Hopfer (1996), 112 Ohio App.3d 521, 548. As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. An appellate court must then independently determine without deference to the trial court's legal conclusions whether, as a matter of law, *Page 6 
evidence should be suppressed. State v. Russell (1998),127 Ohio App.3d 414, 416; State v. Klein (1991), 73 Ohio App.3d 486, 488. Keeping these standards of review in mind, we now consider the arguments presented regarding appellant's sole assignment of error.
 {¶ 15} Appellant argues that the trial court erred when it denied his motion to suppress the evidence recovered at his house. Appellant maintains: (1) Greenwich Police Department lacked proper jurisdiction to investigate his residence; (2) police officers did not have reason to believe that an emergency existed, thus making their warrantless entry of appellant's residence a violation of the Fourth Amendment; and (3) evidence resulting from the officers' search is "the fruit of a poisonous tree" and inadmissible.
 {¶ 16} Conversely, the state insists that the entry by the police officers into appellant's house as part of a "welfare check" was justified under the emergency exception to the warrant requirement, and that the sheriff's subsequent search and seizure pursuant to a search warrant was not poisoned by the prior actions of the police officers.
 {¶ 17} Turning first to the jurisdiction argument, appellant presents no evidence to suggest that the police officers violated the mutual aid agreement between the police and sheriff's departments by their investigation of appellant's residence. Such agreements between police and sheriff's departments are common. See State v. Hawkins, 2d Dist. No. 2002 CA 85, 2003-Ohio-1851, ¶ 2; State v. Royster (June 1, 1998), 5th Dist. No. 1997CA00372. Some agreements allow for ongoing investigations by one department in another department's jurisdiction. SeeRoyster. Other agreements require that a *Page 7 
department in need of assistance first request the services of the other department. Robertson v. Roberts, 11th Dist. No. 2003-T-0125,2004-Ohio-7231, ¶ 7.
 {¶ 18} In this case, appellant does not cite any language in the agreement between the police and sheriff's departments to indicate that the police officers acted outside of the parameters of the agreement. See State v. Hedlund (Dec. 9, 1977), 6th Dist. No. WD-77-17. Appellant also fails to cite case or statutory authority to show that the officers violated the agreement. Spurlock v. Thomas (Dec. 2, 1992), 9th Dist. No. 92CA005341.
 {¶ 19} Turning to appellant's second argument, the Fourth Amendment to the United States Constitution provides for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The state bears the burden of establishing that a warrantless search, which is per se unreasonable, is nevertheless reasonable pursuant to one or more exceptions to theFourth Amendment's warrant requirement. Xenia v. Wallace (1988),37 Ohio St.3d 216, paragraph two of the syllabus.
 {¶ 20} An exception to the warrant requirement occurs when there is a reasonable belief that a person inside the residence is in need of immediate aid. State v. Nields (2001), 93 Ohio St.3d 6, 16,2001-Ohio-1291, citing Mincey v. Arizona (1978), 437 U.S. 385, 391.
 {¶ 21} In situations where law enforcement agents act pursuant to a criminal investigation, this court has held that where probable cause exists, but exigent circumstances are absent, warrantless entries clearly violate the Fourth Amendment. *Page 8 State v. Mims, 6th Dist. No. OT-05-030, 2006-Ohio-862, ¶ 24. Further, "[B]efore government agents may invade the sanctity of the home, the government must demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." Welsh v. Wisconsin (1984), 466 U.S. 740, 750.
 {¶ 22} There is, however, a difference between a warrantless entry based on a reasonable belief of criminal activity, and an entry based on a reasonable belief that a person's life is in immediate danger. As the Ninth District Court of Appeals recently held: "In an emergency situation when someone is in need of immediate aid, however, the police are not searching for evidence of a crime, but for victims. Thus, the emergency aid exception allows officers to enter a dwelling without a warrant and without probable cause when they reasonably believe, based on specific and articulable facts, that a person within the dwelling is in need of immediate aid." State v. Gooden, 9th Dist. No. 23764,2008-Ohio-178, ¶ 6, citing Mincey v. Arizona, supra at 392.
 {¶ 23} Appellant cites two cases from this court in support of the argument that no exigent circumstances existed at the time of the warrantless entry: State v. Scott M. (1999), 135 Ohio App.3d 253, andState v. Christian, 6th Dist. No. F-04-003, 2004-Ohio-3000. In both cases, law enforcement agents conducted warrantless entries and, as a result, discovered underage drinking.
 {¶ 24} Appellant submits these cases to advance an argument that the police officers had no probable cause of criminal activity to enter the house without a warrant, *Page 9 
but in this case the officers did not enter the house because of a suspicion of criminal activity, nor did they enter with the intention of making an arrest. As the officers testified in the hearing, their observations at the scene gave them reason to believe that foul play might have occurred in addition to their reasonable beliefs of the possibility that appellant was in physical danger. Therefore, the cases are distinguishable.
 {¶ 25} Appellant also argues that an emergency exception did not apply because the police officers entered the residence pursuant to a "welfare check" instead of in response to an emergency. According to police testimony, the officers initially drove to appellant's residence to conduct a welfare check. The officers based the check on appellant's unexplained absence from work, the collective inability of appellant's supervisor and the police and sheriff's departments to reach appellant by phone, and a potentially serious work-related injury. Furthermore, when the officers arrived at the scene they observed an absence of tracks in the snow to or from the house, ill-fed cats, and, most notably, an ajar backdoor and a resulting accumulation of snow inside the house. As the United States Supreme Court noted in Mincey, "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'"437 U.S. at 392-393, quoting Wayne v. U.S., 318 F.2d 205, 212.
 {¶ 26} The officers entered the residence out of concern for appellant's safety rather than for the purpose of investigating criminal activity. As such, the welfare check *Page 10 
evolved into an emergency exception to the Fourth Amendment, and the officers were justified in entering the residence.
 {¶ 27} Accordingly, we conclude that the trial court correctly held that the police officers' warrantless entry of appellant's residence was justified by a reasonable belief of an emergency situation. Therefore, the resulting search warrant and seizure of the evidence were not the fruits of a poisonous tree.
 {¶ 28} As such, the trial court correctly denied appellant's motion to suppress evidence seized in the residence pursuant to the properly issued search warrant. Appellant's sole assignment of error is not well-taken.
 {¶ 29} On consideration whereof, the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 11 
 Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J. CONCUR. *Page 1