[Cite as *State v. Donley*, 2022-Ohio-4003.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29429 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-1142 |
| | : | |
| ISREAL DONLEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of November, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ISREAL DONLEY, Inmate No. 714-135, Marion Correctional Institution, P.O. Box 57, Marion, Ohio 43301
    Defendant-Appellant, Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Isreal Donley, appeals pro se from a judgment of the Montgomery County Court of Common Pleas overruling his petition for post-conviction relief. Because the trial court lacked jurisdiction to consider on Donley's untimely petition, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} In February 2015, Donley was tried by a jury and found guilty of one count of possession of cocaine and one count of having weapons while under disability. The jury reached its verdict after the State presented the following evidence at Donley's trial.

{¶ 3} On March 26, 2014, Detective Patrick O'Connell of the Montgomery County R.A.N.G.E. Task Force observed a suspected drug transaction between the resident of a home occupied by a known drug dealer and the driver of a white GMC Yukon, who was later identified as Donley. Det. O'Connell informed his fellow task force member, Deputy Frederick Zollers, of the transaction and advised Dep. Zollers that the Yukon had very dark window tint. After the Yukon left the residence, Dep. Zollers initiated a traffic stop based on the window tint and ran Donley's identification information through his computer system. In doing so, Dep. Zollers learned that the vehicle was registered to Donley's wife, Alma, and that Donley had an outstanding warrant from the juvenile court for a child support issue. Dep. Zollers thereafter arrested Donley pursuant to the warrant and called for a canine unit to do a sniff of the vehicle.

{¶ 4} Within a few minutes, Deputy Joseph Caito arrived at the scene with his

canine. Dep. Caito walked his canine around the vehicle and the canine alerted to the odor of drugs at the area between the front and rear driver-side doors of the vehicle. Thereafter, Dep. Caito terminated the drug sniff, returned his canine to his cruiser, and assisted Dep. Zollers with searching the interior of the vehicle. The search, however, did not yield any drugs.

{¶ 5} Because Donley had been arrested and was the sole occupant of the vehicle, Dep. Zollers had Donley's vehicle towed. Before the tow truck driver drove away with the vehicle, a man who identified himself as Donley's brother asked if he could get something out of the vehicle. Because the vehicle was being impounded by the police, the tow truck driver did not let the man retrieve anything out of the vehicle.

{¶ 6} At the tow yard, the tow truck driver attempted to start Donley's vehicle so that he could put it in a parking spot, but the vehicle would not start. The tow truck driver then looked under the hood of the vehicle to see if there was a mechanical problem. In doing so, the tow truck driver found a gun and a magazine inside a brown, wool-knit hat that was lying on top of the vehicle's battery. The tow truck driver also discovered that the battery had a loose connection.

{¶ 7} After finding the gun and the magazine, the tow truck driver contacted the sheriff's office. The sheriff's office then sent an evidence technician to the tow yard. While the evidence technician was collecting evidence related to the gun, a tow yard employee, "out of curiosity," flipped open the vehicle's gas tank lid and observed a pair of brown jersey gloves wadded up on top of the gas cap. The evidence technician told the employee not to touch the gloves and then removed the gloves himself. In doing so, the

evidence technician found inside one of the gloves a baggie containing a white powdery substance that tested positive for cocaine.

{¶ 8} The baggie of drugs and the gun were swabbed for DNA and tested by a forensic scientist at the Miami Valley Regional Crime Lab. No testing could be performed on the swabs taken from the gun due to there being insufficient DNA to analyze. The test results from the baggie, however, excluded Donley as a possible DNA contributor.

{¶ 9} On July 8, 2014, officers searched other vehicles registered to Donley's wife that Donley used. During the search of a white Cadillac located in front of Donley's residence, officers found brown gloves underneath the hood in the engine compartment. The brown gloves were similar to the garments that were found under the hood of the Yukon at the tow yard.

{¶ 10} As noted above, the jury considered the foregoing information and found Donley guilty of possession of cocaine and having weapons while under disability. The trial court then held a joint sentencing hearing during which it sentenced Donley for the aforementioned offenses and for offenses in Montgomery C.P. Nos. 2014-CR-2391 and 2014-CR-3312. The trial court imposed a ten-year prison term for possession of cocaine and a concurrent three-year prison term for having weapons while under disability. The trial court ordered the resulting ten-year prison term to be served concurrently to a 36-month prison term imposed in Case No. 2014-CR-2391 and consecutively to a 36-month prison term imposed in Case No. 2014-CR-3312. Donley was therefore sentenced to an aggregate term of 13 years in prison.

{¶ 11} Donley appealed from his convictions. In doing so, Donley raised several

assignments of error, including that his convictions for possession of cocaine and having weapons while under disability were not supported by sufficient evidence and were against the manifest weight of the evidence. On February 17, 2017, this court affirmed Donley's conviction for possession of cocaine but vacated his conviction for having weapons while under disability on grounds that there was insufficient evidence to establish that Donley knowingly possessed the gun that was discovered in his vehicle. *State v. Donley*, 2017-Ohio-562, 85 N.E.3d 324, ¶ 60-66 (2d Dist.).

{¶ 12} Over two years later, on May 10, 2019, Donley filed a "Motion for Final Appealable Order" wherein he challenged the post-release control sanctions imposed by the trial court at his joint sentencing hearing. The trial court denied the motion and Donley appealed. On appeal, we found that the trial court had misstated the post-release control sanctions imposed in Case Nos. 2014-CR-2391 and 2014-CR-3312, but we found no error in the post-release control sanction imposed in the instant case. *State v. Donley*, 2d Dist. Montgomery No. 28461, 2020-Ohio-391, ¶ 10-11, 20. Accordingly, we affirmed the judgment of the trial court in this case. *Id.* at ¶ 21. Donley thereafter appealed to the Supreme Court of Ohio, which declined to accept jurisdiction over the matter. *State v. Donley*, 159 Ohio St.3d 1408, 2020-Ohio-3174, 146 N.E.3d 587.

{¶ 13} On August 12, 2021, more than six years after his conviction, Donley filed a petition for post-conviction relief pursuant to R.C. 2953.21. In the petition, Donley argued that he was denied his constitutional rights to a fair trial and confrontation because he had been unable to confront and attack the credibility of one of the State's trial witnesses, Dep. Caito, using certain criminal activity and misconduct in which Dep. Caito

had engaged near the time of Donley's trial. The criminal activity Donley referred to was a fourth-degree-felony conviction for grand theft that Dep. Caito acquired in 2017 for stealing money from a local police union between 2014 and 2016. Donley also referred to a "Letter of Caution" that the Montgomery County Sheriff's Office issued to Dep. Caito on April 2, 2014. The "Letter of Caution," which Donley attached to his petition, reprimanded Dep. Caito for purposely turning off his "In-Car Recording body microphone" and making a threatening remark to a citizen detained in the back seat of his cruiser. Petition (Aug. 12, 2021), Ex. C-1.

{¶ 14} Donley argued in his petition that evidence of Dep. Caito's criminal activity and the "Letter of Caution" would have been admissible at trial for purposes of attacking the veracity and credibility of Dep. Caito's testimony. Donley claimed that this evidence would have "shifted the balance of justice" in his favor had it been presented to the jury. Petition, p. 4. While Donley acknowledged that Dep. Caito's criminal activity had not been discovered until after his trial, he nevertheless argued that he should not be deprived of his right to confront a witness "simply because police were slow to discover the thefts from their very own police union that were taking place prior to and during [his] trial." Reply to State's Memo in Opposition (Oct. 14, 2021), p. 4-5.

{¶ 15} Donley conceded that his petition for post-conviction relief was untimely, but he argued that his delay in filing the petition was excusable under R.C. 2953.23(A)(1) because he was unavoidably prevented from discovering the facts on which his petition was based. Specifically, Donley argued that he became aware of Dep. Caito's criminal activity only because his uncle inadvertently discovered a Dayton Daily News article from

April 10, 2017, that reported on Dep. Caito's grand theft conviction. Donley claimed that his uncle provided him with the article in August or September 2020, and that he could not have obtained it any earlier due to his being in prison and having no access to the internet or news outlets.

{¶ 16} Donley also claimed that he and his family had no reason to investigate Dep. Caito until after they learned of his conviction and that it was not until such investigation that they were able to discover the "Letter of Caution." Donley further argued that he was unavoidably prevented from discovering the facts and evidence upon which his petition was based because the authorities did not discover Dep. Caito's criminal activity until after his trial.

{¶ 17} In ruling on Donley's petition, the trial court did not address whether the trial court had jurisdiction to review the untimely petition as permitted by R.C. 2953.23(A)(1). The trial court also did not address the portion of Donley's argument pertaining to Dep. Caito's criminal activity. Instead, the trial court focused on Donley's argument that he was denied his rights to a fair trial and confrontation due to being deprived of the ability to confront and challenge Dep. Caito's credibility using the "Letter of Caution."

{¶ 18} In considering Donley's "Letter of Caution," the trial court found that the letter constituted extrinsic evidence of a specific instance of conduct that, pursuant to Evid.R. 608(B), would not have been admissible to attack Dep. Caito's character for truthfulness at trial. Although the trial court recognized that Evid.R. 404(B) allows for evidence of prior bad acts to be admitted for certain permissible purposes, the trial court determined that Donley would not have used the "Letter of Caution" for any of the

permitted purposes. Instead, the trial court found that Donley proposed that he would have used the "Letter of Caution" to attack Dep. Caito's character, which was prohibited. Therefore, the trial court determined that the "Letter of Caution" would not have been admissible at trial. Because of this, the trial court concluded that Donley failed to establish a sufficient basis for post-conviction relief and overruled his petition.

{¶ 19} Donley now appeals from the trial court's judgment overruling his petition for post-conviction relief and raises a single assignment of error for review.

**Assignment of Error**

{¶ 20} Under his assignment of error, Donley raises the same arguments that he raised in his petition for post-conviction relief, i.e., that he was denied his rights to a fair trial and confrontation because he was unable to confront and challenge Dep. Caito's credibility at trial using his criminal activity and the "Letter of Caution." Upon review, we find that the trial court properly overruled Donley's petition for post-conviction relief, as the trial court lacked jurisdiction to review Donley's untimely petition.

{¶ 21} Except as otherwise provided by R.C. 2953.23, petitions for postconviction relief must "be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication[.]" R.C. 2953.21(A)(2)(a). A trial court lacks jurisdiction to consider an untimely petition for postconviction relief unless otherwise permitted by R.C. 2953.23. *State v. Morris*, 2d Dist. Montgomery No. 27875, 2018-Ohio-4527, ¶ 16.

{¶ 22} R.C. 2953.23(A)(1)(a) allows a trial court to consider an untimely petition if

the petitioner shows that: (1) he was unavoidably prevented from discovering the facts upon which he relies to present his claim for relief; or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to his situation, and his petition asserts a claim based on that right. *State v. Baker*, 2d Dist. Montgomery No. 27596, 2017-Ohio-8602, ¶ 13, citing R.C. 2953.23(A)(1)(a). "The petitioner must also show by clear and convincing evidence that, if not for the constitutional error from which he suffered, no reasonable factfinder would have found him guilty." *Id.*, citing R.C. 2953.23(A)(1)(b).

{¶ 23} In this case, there is no dispute that Donley's petition for post-conviction relief was untimely. Accordingly, for the trial court to have had jurisdiction to review Donley's petition, Donley first had to show that he had been unavoidably prevented from discovering the facts upon which he relied to present the claims in his petition or that the claims in his petition were based on a new federal or state right that applied retroactively to his situation. As previously discussed, Donley claims that the untimeliness of his petition should be excused because he was unavoidably prevented from discovering Dep. Caito's criminal activity and the "Letter of Caution"—not because of a new federal or state right.

{¶ 24} Upon review, we find that even if this court were to conclude that Donley had been unavoidably prevented from discovering Dep. Caito's criminal activity and the "Letter of Caution," Donley did not satisfy the second requirement under R.C. 2953.23(A)(1)(b). Again, that section of the statute required Donley to prove by clear and convincing evidence that no reasonable factfinder would have found him guilty but

for the constitutional error on which his petition was based. To satisfy this requirement, "it is not enough for [Donley] to claim to have acquired new evidence that is somehow relevant to his case; [Donley] must prove by clear and convincing evidence that an outcome-determinative constitutional error occurred at trial." *State v. Kraus*, 6th Dist. Ottawa No. OT-18-014, 2018-Ohio-5283, ¶ 21.

**{¶ 25}** The constitutional error on which Donley's petition is based was that he had been denied his rights to a fair trial and confrontation because he was unable to confront and challenge Dep. Caito's credibility at trial using his criminal activity and the "Letter of Caution." However, it has been recognized that " '[[a] witness] credibility challenge is insufficient to demonstrate, by clear and convincing evidence, that "no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." ' " *Id.*, quoting *State v. Sprenz*, 9th Dist. Summit No. 22433, 2005-Ohio-1491, ¶ 11, quoting 2953.32(A)(1)(b). This is because "the burden of clear and convincing [evidence] cannot be satisfied by mere conjecture or speculation." *Middletown v. McGee*, 39 Ohio St.3d 284, 286, 530 N.E.2d 902 (1988).

**{¶ 26}** Here, Donley's claim that the jury's verdict would have shifted in his favor had he been able to challenge Dep. Caito's credibility using the criminal activity in question and the "Letter of Caution" was purely speculative. Because his claim was based on speculation and conjecture, it was insufficient to satisfy the clear and convincing evidence requirement in R.C. 2952.23(A)(1)(b). *See State v. Carter*, 2d Dist. Clark No. 2003-CA-11, 2003-Ohio-4838, ¶ 15; *State v. Greathouse*, 2d Dist. Montgomery No. 23259, 2010-Ohio-1617, ¶ 30; *State v. Gray*, 8th Dist. Cuyahoga No. 106589, 2018-Ohio-

3678, ¶ 37-38.

{¶ 27} In so holding, we note that Dep. Caito had a very limited role in this case, as he simply responded to a traffic stop for purposes of conducting a canine sniff. Although Dep. Caito helped Dep. Zollers conduct a search of Donley's vehicle after his canine alerted to drugs, the record indicates that the deputies did not find any drugs during the search. In addition, the record indicates that Dep. Caito left the scene of the traffic stop before the search of the vehicle was completed because he had to conduct a canine sniff at another location. It is also clear that Dep. Caito was not present when the drugs were later found in the vehicle's gas cap at the tow yard. Given Dep. Caito's limited role in the case, we fail to see how attacking his credibility in the manner proposed by Donley would have affected the jury's verdict.

{¶ 28} In an effort to establish otherwise, Donley noted that the sheriff's office erased the cruiser video footage of his traffic stop and suggested that Dep. Caito's criminal activity and his act of improperly turning off his body microphone as described in the "Letter of Caution" supported the notion that Dep. Caito possibly destroyed the cruiser video in order to cover up wrongful activity by the officers. Based on this assertion, Donley argued that knowledge of Dep. Caito's criminal activity and the "Letter of Caution" would have shifted the jury's verdict in his favor.

{¶ 29} Again, this claim was purely speculative and insufficient to satisfy the clear and convincing evidence requirement in R.C. 2953.23(A)(1)(b). Also, in Donley's direct appeal, this court determined that there was no indication that the cruiser video had been destroyed by the sheriff's office in bad faith. *Donley*, 2017-Ohio-562, 85 N.E.3d 324, at

¶ 72. Specifically, Dep. Zollers testified that since the gun and drugs were not found during the traffic stop, the cruiser video was categorized as a traffic stop and destroyed within 30 days of the incident in accordance with the retention policy of the sheriff's office. *Id.* We also note that the record establishes that Donley had the opportunity to cross-examine Dep. Caito and the other officers regarding the destruction of the cruiser video, as Donley knew about the destruction of the video at the time of trial and challenged it on appeal.

{¶ 30} Because the claims in Donley's petition for post-conviction relief concerned a witness-credibility challenge and were purely speculative, they did not satisfy the requirement under R.C. 2953.23(A)(1)(b). For this reason, the trial court lacked jurisdiction to review Donley's untimely petition. Although the trial court did not reach this conclusion in its decision, the fact remains that the trial court correctly overruled Donley's petition, albeit for a different reason. *See State v. Hall*, 2d Dist. Miami No. 1997-CA-22, 1997 WL 691509, *1 (Oct. 24, 1997), citing *Newcomb v. Dredge*, 105 Ohio App. 417, 152 N.E.2d 801 (2d Dist.1957) ("[i]f a trial court has stated an erroneous basis for its judgment, an appellate court will affirm the judgment if it is legally correct on other grounds, that is, when it achieves the right result for the wrong reasons").

{¶ 31} For all the foregoing reasons, Donley's assignment of error is overruled.

## Conclusion

{¶ 32} Having overruled Donley's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Isreal Donley
Hon. Dennis J. Adkins